UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ERIN MELISSA WOLFSON,

    Plaintiff,

v.                                        CASE NO. 6:22-CV-851-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

This is an action for review of the administrative denial of disability insurance benefits (DIB), period of disability benefits, and supplemental security income benefits (SSI). *See* 42 U.S.C. § 405(g). Plaintiff argues that the agency's decision is not supported by substantial evidence because the Administrative Law Judge (ALJ) did not properly weigh the medical source opinion from her treating neurologist and did not properly consider her subjective complaints. After considering Plaintiff's brief (doc. 20), the Commissioner's brief (doc. 25), and the administrative record (doc. 13), I find the ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence. Remand is necessary.[1]

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

I.     Background

Plaintiff Erin Melissa Wolfson, born on December 24, 1984, was 34 years old on her alleged disability onset date, August 13, 2019 (Tr. 127). She claims disability due to multiple sclerosis, fibromyalgia, patellofemoral syndrome,[2] hidradenitis suppurativa[3] (Tr. 235). Plaintiff earned a Bachelor of Arts degree and worked in retail (Tr. 42). She has past work experience in pharmaceuticals, and as a customer service clerk (Tr. 49-50). At her administrative hearing, she testified that she gets infusions every six months at a cancer center to treat her multiple sclerosis and suffers from fatigue, back pain, and numbness in her hands (Tr. 43-46).

Given her alleged disability, Plaintiff filed an application for a period of disability and DIB (Tr. 204-213). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 127-138, 139-151, 154-172, 173-191). Plaintiff then requested an administrative hearing (Tr. 284-285). Per Plaintiff's request, the ALJ held a telephonic hearing on June 3, 2021, due to the extraordinary circumstances presented by the Coronavirus Disease 2019 (Covid-19) Pandemic (Tr. 35-69). Following the hearing, the ALJ issued a decision on August

---

[2] Patellofemoral pain syndrome is a broad term used to describe pain in the front of the knee and around the patella. While this condition is common in athletes, it can occur in non-athletes too. The pain and stiffness caused by this condition can make it difficult to climb stairs, kneel down, and perform other everyday activities. www.orthoinfo.aaos.org (Oct. 2020).

[3] Hidradenitis suppurativa, sometimes known as acne inversus, is a chronic inflammatory skin condition with lesions including deep-seated nodules and abscesses, draining tracts, and fibrotic scars. www.ncbi.nlm.nih.gov (2023).

31, 2021 (Tr. 12-34).  In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021, and had not engaged in substantial gainful activity since her alleged onset date, August 13, 2019 (Tr. 18).  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments through the date last insured:  multiple sclerosis, fibromyalgia, obesity, hidradenitis suppurativa, and polyarthralgia (Tr. 19).  Notwithstanding the noted severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19).  The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following restrictions:

> The claimant could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  However, she could never climb ladders, ropes, and scaffolds and should avoid unprotected heights.

(Tr. 20). In formulating Plaintiff's RFC, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529, 419.929, and SSR 16-3p (Tr. 20).

    The ALJ opined that Plaintiff is unable to perform her past relevant work, Yard Good Salesperson (DOT 261.357-070), Women's Clothing Sales Person (DOT 261.664-010), Stock Clerk (DOT 299.367-014), and Cashier/Checker (DOT 211.462-

014) (Tr. 26). Given Plaintiff's background, and the RFC, the vocational expert (VE) testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as the jobs of Charge Account Clerk (DOT 205.367-014), Food and Beverage Clerk (DOT 209.567-014), and Call Out Operator (DOT 237.367-014) (Tr. 27). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 27). Plaintiff then timely appealed, and the Appeals Council denied her request for review (Tr. 1-6). Thereafter, Plaintiff filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

  II.  *Standard of Review*

  To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

  To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry

4

is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

  The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria

5

listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969.  If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only.  20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to

determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    III.    *Discussion*

Plaintiff argues that the agency's decision is not supported by substantial evidence because the ALJ did not properly weigh treating neurologist Scott Gold's opinions and did not properly consider her subjective complaints.  These arguments are intertwined, and I will address them together.  The Commissioner responds that Plaintiff must do more than point to evidence in the record that supports her position; she must show an absence of substantial evidence supporting the ALJ's decision.

Dr. Gold began treating Plaintiff in November 9, 2018, for multiple sclerosis and completed a Multiple Sclerosis Medical Source Statement on May 21, 2020 (Tr. 1127-1131).  In it, Dr. Gold described Plaintiff's prognosis as "guarded" and indicated her symptoms include fatigue, balance problems, weakness, numbness, tingling, and sensory disturbances (Tr. 1127).  Dr. Gold further opined that Plaintiff is not a malingerer and has "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station" (Tr. 1128).  In a handwritten response, Dr. Gold described Plaintiff's "[i]mpaired hand sensation and fine dexterity affecting function" and "[i]mpaired leg strength affecting balance/ gait- fall risk" (Tr. 1128).  When asked whether Plaintiff has "significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical

7

examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process," Dr. Gold answered "yes" (Tr. 1128). In handwriting, he described her degree of exercise and the severity of resulting muscle weakness as "moderate, both legs" (Tr. 1128). Dr. Gold indicated that she has not had any exacerbations within the past two years, but wrote that she has "progressive deficits due to MS" (Tr. 1128). Dr. Gold indicated Plaintiff complains of a type of fatigue typical of multiple sclerosis patients best described as "lassitude" (rather than fatigue of motor function); and opined that her impairments are reasonably consistent with her symptoms and functional limitations (Tr. 1128).

Dr. Gold also opined that Plaintiff can walk less than one city block without rest; can continuously sit for two hours and stand for ten minutes; and can sit about two hours in an eight-hour working day and stand/ walk for less than two hours in an eight-hour working day (Tr. 1129). According to Dr. Gold, Plaintiff will need to take unscheduled breaks every fifteen minutes during an eight-hour working day and will need to rest for ten minutes before returning to work (Tr. 1130). Dr. Gold also indicated Plaintiff will need to elevate her legs at a 90-degree angle 70% of the time during an eight-hour working day; will have significant restrictions doing repetitive reaching, handling, or fingering; and will not be able to bend or twist (Tr. 1130). Lastly, Dr. Gold opined that Plaintiff is likely to experience good days and bad days and be absent from work three days per month (Tr. 1131).

In considering Dr. Gold's opinion, the ALJ noted he used "largely a series of check boxes in which he fails to provide any argument or evidence in support of his conclusions" and to the extent that it does, "it is internally inconsistent" (Tr. 25). The ALJ stated that Dr. Gold "notes a number of significant functional limitations but also inconsistently notes that the claimant successfully controls her MS with medication" (Tr. 25). The ALJ explained, "[m]any of the marked and extreme limitations outlined in Dr. Gold's opinion are generally not consistent with or well-supported by the other substantial evidence of record" (Tr. 25). The ALJ indicated that there is nothing in the evidentiary record suggesting that Plaintiff needs to elevate her legs, that her fatigue would affect her focus and concentration, or that she would need to miss more than three days of work per month (Tr. 25). Rather, the ALJ pointed to record evidence showing Plaintiff possessed normal strength and range of motion, to Plaintiff's testimony that she manages her own personal care; and completes simple meal preparation, shopping, and housework (Tr. 25). The ALJ gave greater weight to the opinion of the State Agency medical consultant at the reconsideration level, Dr. Wooten, who reviewed the record evidence and opined that Plaintiff can perform light work (Tr. 25, 154-191).

Upon review, I find that the ALJ erred in discounting the opinion of Plaintiff's treating neurologist, Dr. Gold. Under the new regulations, the ALJ is not required to give specific weight to a treating source opinion. The ALJ must, however, evaluate and articulate the persuasiveness of a medical opinion by considering several factors, including whether the opinion is supported by the evidence, the length of treatment

relationship and relationship with the claimant, and the specialization of the provider. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b)(2); 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), (4), & (5); 416.920c(c)(3)(i)-(v), (4), & (5).

In this case, Dr. Gold is a neurologist who treats Plaintiff's MS and began treating her prior to her alleged disability onset date. Contrary to the ALJ's description, the five-page "Multiple Sclerosis Medical Source Statement" form the Dr. Gold completed includes narrative and is more than just "a series of checked boxes" (Tr. 25, 1127-1131). Dr. Gold's medical records provide objective medical evidence and supporting explanations that support Dr. Gold's opinion on the form. Moreover,

as discussed below, other medical evidence and Plaintiff's subjective complaints are consistent with Dr. Gold's opinion.

In discrediting Dr. Gold's opinion, the ALJ stated that medical evidence from Dr. Gold reveals that Plaintiff "successfully controls her MS with medication" (Tr. 25). The ALJ then found that the "significant functional limitations" Dr. Gold identified were "internally inconsistent" with the fact that her multiple sclerosis was controlled with medication (Tr. 25). In reaching this finding, the ALJ mischaracterized the evidence. When asked on the form whether Plaintiff experienced exacerbations of multiple sclerosis during the past two years, Dr. Gold indicated "[she had] none- controlled with medication" (Tr. 1128). The form, like Dr. Gold's office notes, clearly portrays that although Plaintiff had no multiple sclerosis exacerbations since March 27, 2018, when she started the long-term immunosuppressant drug Ocrevus, she still experienced a number of chronic neurological conditions, fatigue, mild memory loss, gait imbalance, hand numbness, mild weakness, and blurred vision in her left eye (Tr. 840-860, 944, 1001, 1012, 1014, 1095-1098). In reviewing Plaintiff's brain MRI's, Dr. Gold noted "multiple non-enhancing brainstem, cerebellar peduncle, callosal periventricular, and juxtacortical white matter hyperintensities typical of MS, several of which are associated with black hole formation" (Tr. 944, 1009). In his September 4, 2020, office note, Dr. Gold noted that Plaintiff "feels there may be a slight progression in her symptoms over the last 2-3 years" (Tr. 1001).

Dr. Gold treated Plaintiff in conjunction with neurologists at Shands at the University of Florida. Consistent with Dr. Gold's records, Shands' records indicate

Plaintiff had relapsing remitting multiple sclerosis;[4] her MRIs showed periventricular T2 hyperintensities compatible with multiple sclerosis; she struggled to walk in tandem; and she had neurological sensory changes and focal weakness, fatigue, numbness and tingling of bilateral hands, difficulty focusing with vision, and difficulty swallowing (Tr. 1018, 1020, 1023, 1025, 1028, 1030, 1031, 1033, 1034). A Shands' note dated November 5, 2020, describes:

> … worsening of disease both clinically and on imaging and was switched over [to] the Ocrevus March of 2018. She still is having difficulty … standing for any length of time. She cannot cook at this point for a length of time. She has heat intolerance. She cannot sustain prolonged activity. She has decreased endurance and fatigue.

(Tr. 1037). On this date, Dr. Bruce Solomon at Shands characterized Plaintiff's gait as "abnormal," explaining that "[s]he does have some unsteadiness and ataxia with a wide-based gait" (Tr. 1038). Dr. Solomon opined:

> Impressions/ plans as a medical complexity- this patient is 35 years of age with a history and examination of relapsing remitting multiple sclerosis with disease above or below the tentorium including spinal cord disease. She is on appropriate disease modifying therapy in the form of Ocrevus. She does have a local neurologist and she will be obtaining safely laboratory studies which I will need to review prior to her next infusion which will be over the next month. I will be a resource for her locally. She does travel from a distance and I do not want to make it a hardship to come. I will plan on seeing her back in one year's time unless she needs me before that…. Certainly, I would advocate for concerning her disability application.

(Tr. 1038).

---

[4] Relapsing remitting multiple sclerosis is the most common disease course, characterized by clearly defined attacks of new or increasing neurologic symptoms. These attacks, called relapses or exacerbations, are followed by periods of partial or complete recovery (remissions). https://www.nationalmssociety.org/What-is-MS/Types-of-MS-Relapsing-remitting-MS.

In light of this evidence, I cannot conclude that the ALJ's decision that Dr. Gold's opinion is "minimally persuasive" is supported by substantial evidence. The ALJ mischaracterized Plaintiff's usage of MS medication to "successfully control" her multiple sclerosis and failed to evaluate the persuasiveness of Dr. Gold's opinion as required by 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Dr. Gold's opinions were supported by and consistent with his treatment notes, objective medical evidence, the medical evidence in the record, and Plaintiff's subjective complaints.

Relatedly, Plaintiff labels the ALJ's consideration of her subjective complaints as "basically boiler plate" (Doc. 20 at 22). In her decision, the ALJ stated in conclusory fashion that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 21). In support, the ALJ cited to Plaintiff's daily activities, finding them "inconsistent with the extent of her alleged limitations" (T. 21). First, the ALJ acknowledged at step two that Plaintiff has fibromyalgia, a condition "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987-88 (11th Cir. 2015) (quoting SSR 12-2p, 2012 WL 3104869, at *1). SSR 12-2p provides guidance on how the SSA develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and how the SSA evaluates fibromyalgia in

a disability claim. SSR 12-2p, 2012 WL 3104869, at *1. The ruling directs ALJs to consider fibromyalgia in the five-step sequential evaluation process and instructs them on how to develop evidence and assess the impairment in determining if it is disabling. *Id.* Per SSR 12-2p, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.* at *6. In fact, fibromyalgia's characteristic waxing and waning symptoms may prevent a person from performing a full range of work. *Id.* The ruling recognizes that it is common in cases involving fibromyalgia to find evidence of "normal" examinations and test results that have ruled out other disorders that could account for the person's symptoms and signs. *Id.* at *3.

      Second, the ALJ's reliance on Plaintiff's participation in everyday activities of short duration, such as housework, driving, and shopping, is misplaced. The Eleventh Circuit has noted that participation in these types of everyday activities does not disqualify a claimant from disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *Venettee v. Apfel*, 14 F.Supp. 2d 1307, 1314 (S.D. Fla. 1998) (citing *Walker v. Heckler,* 826 F.2d 966 (11th Cir. 1987)) (finding housework, light cooking, and light grocery store shopping were minimal daily activities and not dispositive evidence of one's ability to perform sedentary work in a Social Security case). Plaintiff testified at her administrative hearing that she lacks energy to complete simple tasks like walking from the kitchen to the bedroom or taking a shower. She testified that she skips her shower ten days a month (Tr. 46). She also testified that she can walk one-half to

14

three-fourths of a mile on some days, but on other days she cannot walk around the block (Tr. 50). Thus, consistent with Dr. Gold's opinion, Plaintiff reports that she experiences good days and bad days.

Also consistent with Dr. Gold's opinion, Plaintiff testified that for the past four to five years she has elevated her legs 70-95% of the day (Tr. 53-54). Her testimony and functional reports are also consistent with Dr. Gold's opinion and other record evidence. Plaintiff testified that she can stand for 15 minutes and sit for 15-20 minutes; when shopping, she leans on the grocery cart for support and balance (Tr. 51-52). In her Function Report, Plaintiff described difficulty getting dressed and eating (Tr. 400). Specifically, she wrote she "sit[s] or lean[s] against the wall to put on pants & shoes because of balance" (Tr. 400). When eating, she "prefer[s] using a spoon rather than fork because more control [and] prefer[s] using bowl rather than plate because more control" (Tr. 400).

While it is impermissible for this Court to re-weigh the evidence, the ALJ must support the decision with substantial evidence such that a reasonable person would accept it as adequate to support its conclusions. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Here, the ALJ did not do that when rejecting Dr. Gold's opinions and the Plaintiff's testimony, and that failure warrants remand.

    *IV.   Conclusion*

    It is ORDERED:

(1) The ALJ's decision is REVERSED and REMANDED to the Commissioner for further administrative proceedings consistent with this Order; and

(2) The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on this 8th day of May, 2023.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE